UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBORAH STEWART, | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
|    *vs.* | ) | 1:10-cv-00543-JMS-DKL |
| | ) | |
| HOBBY LOBBY STORES, INC., | ) | |
|    *Defendant.* | ) | |

# ORDER

Presently before the Court in this defamation action is Defendant Hobby Lobby Stores, Inc.'s ("Hobby Lobby"), motion for summary judgment. [Dkt. 41.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56.

As the current version Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

## II.
### BACKGROUND

Plaintiff Deborah Stewart is a former bookkeeper at a Hobby Lobby retail store. [*See* dkt. 43-2 at 21-22.] As part of her job duties, she balanced the store's safe, which was kept in her office, and prepared cash for the store's cash register. [*Id.* at 28-29, 34.] When she arrived at work on December 21, 2009, a Monday, she discovered that the safe had been emptied of its cash over the weekend. [*Id.* at 61-62.]

After the burglary had been reported to the police, [*id.* at 63], district manager Michael Craft came to the store to investigate, [*see* dkt. 43-1 ¶2]. His review of the video surveillance revealed that "Ms. Stewart left the office to go home for the day [on Saturday, December 19] immediately after the assistant manager, Brenda Sheetz, left the office, that the safe had been

[closed but unlocked], and that the thief entered the office only a few minutes after Stewart and Sheetz had left the office." [*Id.* at ¶4.] Mr. Craft then interviewed Ms. Stewart, Ms. Sheetz, and the store manager, operating under the premise that "there were too many coincidences that allowed th[e] theft to occur" without help from one or more of them. [*Id.* ¶5.]

Mr. Craft's three meetings with Ms. Stewart on December 21 underlie this case, each of which occurred in the manager's office in the presence of Roger Najack, a manager from another store serving as a witness per company policy. [*Id.* ¶8; dkt. 42-2 at 71-72.] At the first meeting, Mr. Craft questioned Ms. Stewart concerning the identity of the burglar shown on the video and about her conduct before leaving the store on the date of the burglary. [*Id*. at 72.] At the second meeting, Mr. Craft pointed out that the burglar was on a cell phone and accused Ms. Stewart of "talking to him. You're [to Ms. Stewart] his inside man. You're letting him know what's going on in the store and who's around the office. And you're the lookout man." [*Id.* at 77.] A little while later, Mr. Craft summoned Ms. Stewart back into the manager's office for the final meeting. He told her that "he knew that [she] was part of the robbery," that Ms. Stewart and the two others "were all in on it," and that he would have her "prosecuted to within an inch of the law." [*Id.* at 79.] He then handed her a termination notice, which listed her failure to lock the safe as the reason for her termination. [*Id.* at 83.]

Despite his verbal accusations that he knew that she was involved with the burglary, Mr. Craft now concedes that he "had not been able to determine one way or the other whether Stewart had been involved in the theft" before he fired her. [Dkt. 43-1 ¶7.] Instead, all he could do was "wonder" whether she had been. [*Id.*]

# III.
## DISCUSSION

For the purposes of summary judgment, Hobby Lobby does not dispute that Ms. Stewart can establish a prima facie claim of defamation based upon Mr. Craft's accusations of her involvement in the burglary. [*See* dkt. 42 at 9.] Instead, it claims on summary judgment that Mr. Craft had a qualified privilege of common interest in making the allegedly defamatory statements, thereby precluding liability. [*Id.*]

"[T]he qualified privilege of common interest…applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 188 (Ind. 2010) (quotation omitted). If a defendant can establish both the good faith and common-interest elements, the burden shifts to a plaintiff to prove that the speaker abused the qualified privilege. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009).

As for whether a common interest existed here between Mr. Craft and Mr. Najack, who overheard the accusations of theft, the Court finds no issue of fact exists. As a matter of law, "[i]ntracompany communications regarding the fitness of an employee" satisfy this element, *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (citation omitted), including communications reporting that one employee has stolen from the employer, *Dugan*, 929 N.E.2d at 189 (finding privilege applicable to good-faith reporting to security chief that employee was defrauding the company). Hobby Lobby has come forth with evidence to satisfy its burden with respect to this element: Mr. Craft and Mr. Najack were both Hobby Lobby managers, and Mr. Najack's presence during the meeting occurred only as part of official Hobby Lobby policy. [*See* dkt. 43-1 ¶¶1, 8.] Ms. Stewart concedes those facts. [*See* dkt. 46 at 6 ("The Defendant certainly has an

interest in investigating workplace theft, and it was Mr. Craft's duty to do so.").] Although she argues that the statements at issue were false and exceeded the scope of the privilege, those arguments are irrelevant to the issue of whether Hobby Lobby has established the first element of the privilege. *Cf. Kelley v. Tanoos*, 865 N.E.2d 593, 601 (Ind. 2007) (finding that the plaintiff failed to show that the defendant abused the privilege by delving into statements beyond the scope of the "privileged occasion"); *Bals*, 600 N.E.2d at 1356 (listing three grounds for abuse of the privilege: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." (citation omitted)).

As for the good-faith element of this affirmative defense, the Court finds that Hobby Lobby has failed to designate sufficient evidence to establish its existence in the first instance; therefore, Ms. Stewart has no obligation to show it in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (explaining that the standard for summary "mirrors the standard for a directed verdict"). "'Good faith,' in the context of defamation law, is defined as 'a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable.'" *Nexus Group, Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (quoting *Owens v. Schoenberger*, 681 N.E.2d 760, 764 (Ind. Ct. App. 1997)). Its existence or non-existence depends upon a careful consideration of the facts. *Cf. Kelley*, 865 N.E.2d at 601 ("Whether a defendant acted in good faith in making a statement usually is a question of fact for the jury." (quotation omitted)).[1] Here, despite acknowledging the existence of the good-faith element, [dkt. 42 at 15], Hobby Lobby's opening

---

[1] The Court does not, of course, intend to suggest that Indiana procedural law governs—only that the evidentiary record matters. *See Show v. Ford Motor Co.*, ___ F.3d ___, 2011 U.S. App. LEXIS 19203 (7th Cir. 2011) ("Rules about jury control, and the allocation of tasks between judge and jury, are matters of forum law.").

brief makes no attempt to demonstrate its applicability, apparently—but impermissibly—conflating that element with the element of common interest or duty, [*see id.* at 12-13 ("Craft's statements concerning possible involvement in the burglary relate to a matter of common concern. Accordingly, Craft's statements are subject to the qualified privilege." (citation omitted).] Furthermore, the Court notes that Mr. Craft's exceptionally carefully worded affidavit makes no claim of good faith with respect to his accusations about Ms. Stewart—he claims justified suspicion as opposed to actual belief. [*See* dkt. 43-1.] Given that the Court must give Ms. Stewart the benefit of the inferences as the nonmoving party, that omission is fatal to Hobby Lobby's burden to demonstrate good faith at the summary judgment stage.

In summary, while the Court finds that Mr. Craft spoke pursuant to a common duty or interest, the issue of his good faith and, if the jury finds good faith, the issue of whether any privilege was lost through abuse will have to be determined at trial.

## IV.
### CONCLUSION

Hobby Lobby's motion for summary judgment, [dkt. 41], is **DENIED**. The magistrate judge is requested to conduct a status conference with the parties to select a reasonable trial date.

11/04/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Jonathan A. Bont
BOSE MCKINNEY & EVANS, LLP
jbont@boselaw.com

Jason R. Delk

DELK MCNALLY
delk@delkmcnally.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com